Brett L Eliason, Trustee
36 Timber Trail
Ramsey, New Jersey, 07446
801-949-0080
Brett.eliason1@gmail.com
 Plaintiff is Self-Represented "Pro Se"

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

### 50 Walnut Street, Newark, New Jersey, 07102

| | |
|---|---|
| THE ESTATE OF MAX AND JOYCE ELIASON, By and through their heirs and interested persons, including Plaintiffs herein. | PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, PRESERVATION OF EVIDENCE, AND REFERRAL OF CRIMINAL CONDUCT |

BRETT L. ELIASON, an individual;

VERONIQUE ELIASON, an individual;

KYLIE M. ELIASON, an individual;

BRITTNIE L. ELIASON, an individual.

_____

Plaintiff

v.


THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS

KIRTON MCCONKIE, P.C.

CRAIG MCCULLOUGH, an individual

LISA STEPHENS, an individual

BRYAN STEPHENS, an individual

**Case No.   26-cv-3254**

**Judge:   Evelyn Paden**

JOHN AND JANE DOES TO BE ADDED


_____

Defendant

1

## I. INTRODUCTION

Plaintiffs bring this Emergency Motion pursuant to **Federal Rule of Civil Procedure 65(b)** seeking immediate relief to prevent ongoing and irreparable harm.

This Motion arises from recent actions taken by Defendants and their agents, including the abrupt termination of Plaintiffs' income and financial distributions based on unproven allegations. At the same time, Plaintiffs present documented and unresolved irregularities surrounding the medical condition, treatment, and estate-related actions involving Joyce S. Eliason in April and May of 2018.

These issues are not raised for sensational purposes. They are raised because they are directly tied to:

- the validity of controlling estate documents,
- the authority asserted by Defendants, and
- the ongoing financial control currently being exercised against Plaintiffs.

Together, these circumstances establish both **immediate irreparable harm** and a **record requiring preservation and independent review**.

_____

## II. BASIS FOR EX PARTE RELIEF

Under **Rule 65(b)(1)**, a temporary restraining order may issue without notice where:

"specific facts… clearly show that immediate and irreparable injury… will result before the adverse party can be heard."

Such circumstances are present here, where Plaintiffs' income has been cut off during active litigation, and where delay risks further harm and potential loss of critical evidence.

_____

## III. STATEMENT OF FACTS

### A. Ongoing Financial Harm

1. Defendants have accused Plaintiff Brett L. Eliason of fraud without providing specific factual support;
2. Based on those accusations, Defendants have terminated or withheld financial distributions;
3. These actions are ongoing and are occurring during the pendency of this litigation;
4. Plaintiffs continue to suffer immediate and escalating financial harm.

2

## B. Irregularities Surrounding Joyce Eliason's Medical Condition and Estate Actions

5. In April 2018, Joyce Eliason reported taking morphine, despite medical records indicating her physician would not prescribe such medication due to respiratory risks;
6. Between April 17–21, 2018, she experienced rapid deterioration, including shallow breathing, confusion, and eventual coma requiring hospitalization;
7. During this same timeframe, dispositive estate amendments were executed, materially altering control of assets;
8. Following execution, Joyce Eliason questioned what she had signed, indicating potential lack of capacity;
9. Statements were made to medical personnel asserting a "DNR," despite prior expressed wishes to remain alive under all circumstances;
10. Requests for medical records, trust documentation, and explanations have been repeatedly denied.

---

## C. Continuing Pattern of Concealment and Control

11. Defendants have refused to provide accounting or transparency regarding estate assets;
12. Control over financial distributions has been exercised unilaterally;
13. The same individuals and entities involved in the above-described events continue to exercise control over Plaintiffs' financial interests.

---

## IV. IRREPARABLE HARM

Plaintiffs are experiencing:

- loss of primary income;
- inability to meet financial obligations;
- ongoing financial instability during litigation.

Additionally, delay creates risk that:

- critical medical and financial records may be lost or altered;
- evidence relevant to the validity of estate documents may be compromised.

These harms cannot be adequately remedied after the fact.

3

## V. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs have presented substantial evidence supporting their claims, including:

- governing trust documents;
- documentary inconsistencies regarding execution and authority;
- evidence of lack of accounting and transparency;
- and irregularities surrounding medical events directly tied to estate control.

These facts establish a strong likelihood of success.

## VI. NEED FOR PRESERVATION AND REFERRAL

Plaintiffs do not ask this Court to make criminal findings.

However, the record reflects:

- possible administration of a controlled substance without prescription;
- execution of dispositive legal documents during a period of severe impairment;
- refusal to provide records or explanation;
- and ongoing control over assets derived from those events.

Under its inherent authority, this Court may:

- ensure preservation of evidence;
- and refer matters to appropriate authorities for independent review.

See *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Where credible evidence raises serious questions of potential misconduct, referral is not extraordinary—it is appropriate.

## VII. BALANCE OF HARMS

The balance strongly favors Plaintiffs.

- Maintaining the status quo imposes minimal burden on Defendants;
- Failure to act permits continued harm and potential loss of evidence.

## VIII. PUBLIC INTEREST

The public interest supports:

- preservation of evidence;
- enforcement of fiduciary obligations;
- and ensuring that courts are not used to shield potential misconduct.

---

## IX. REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court:

1. **Issue a Temporary Restraining Order restoring and preserving financial distributions;**
2. **Order immediate preservation of evidence,** including:
   o   medical records (April–May 2018);
   o   prescription and physician records;
   o   communications among Defendants;
   o   trust and estate documents;
3. **Order limited disclosures,** including:
   o   identification of the source of morphine;
   o   identification of individuals involved in administering care;
   o   identification of individuals present during execution of estate documents;
4. **Refer this matter to appropriate investigative authorities** for review of potential criminal conduct;
5. **Set an expedited hearing** on preliminary injunctive relief;
6. Grant such other relief as the Court deems just and proper.

---

## X. CERTIFICATION REGARDING NOTICE

Plaintiffs certify that:

- immediate and irreparable harm will occur before Defendants can be heard;
- and that ex parte relief is necessary to prevent further harm and potential loss of evidence.

5

## XI. CONCLUSION

This Motion presents two realities:

First, Plaintiffs are suffering immediate and ongoing harm that requires urgent intervention.

Second, the record contains serious and unresolved irregularities that cannot be ignored without risk to the integrity of these proceedings.

Plaintiffs do not ask this Court to draw conclusions.

They ask only that the Court:

preserve the evidence
prevent further harm
and allow appropriate review where warranted

SEE ATTACHED EXHIBIT A ENTITLED NOTICE TO THE COURT FILED ON APRIL 1ST, 2026 IN THE THIRD DISTRICT COURT OF SALT LAKE COUNTY

DATED this 2ND day of April, 2026.

Brett L. Eliason
Plaintiff, Pro Se

On behalf of himself and submitting on behalf of the following Plaintiffs:

Veronique Eliason
Kylie M. Eliason
Brittnie L. Eliason

6

# EXHIBIT A

## NOTICE TO THE COURT

**NOTICE TO THE COURT**

Plaintiffs bring this Motion on an emergency basis and respectfully request that the Court consider the accompanying Motion for Temporary Restraining Order on an emergency and Ex Parte basis. Immediate relief is necessary because Plaintiffs are currently suffering ongoing and irreparable harm, including the continued deprivation and potential dissipation of estate and trust assets, as well as the inability to access resources necessary for financial stability and housing.

Notice to Defendants prior to entry of a Temporary Restraining Order would further risk the concealment, transfer, or dissipation of assets, thereby rendering the requested relief ineffective. Plaintiffs therefore request that the Court issue a Temporary Restraining Order immediately and set the matter for an expedited hearing on a preliminary injunction.

The harm described herein is ongoing and immediate. Assets are subject to continued control, transfer, or dissipation, and Plaintiffs remain deprived of access to resources necessary for financial stability. Absent immediate intervention, the harm will continue and may become irreversible as housing has already been impacted and assets being disposed of to avoid homelessness. Accordingly, Plaintiffs respectfully request that the Court consider this Motion on an expedited and Ex Parte basis.

This filing is made because the present situation can no longer honestly be described as a routine dispute, nor as a narrow disagreement over business governance, nor as an ordinary family estate conflict. What is before this Court is the cumulative result of years of unanswered questions, denied hearings, blocked discovery, withheld accountings, unresolved conflicts of interest, and escalating retaliation against a family that has repeatedly asked for only the most basic thing the law promises: an answer.

This entire matter is a mockery of justice, and a revelation as to just how deep corruption can be found in both the Church and State. The plaintiffs in this case are being allowed to file frivolous and vexatious complaints such as defamation, while concealing what is arguably one of the largest crimes in history while the entire judicial system ignores its oath to enforce laws and uphold the constitution.

The undeniable evidence which can be proven in front of a jury includes:

1. Fraudulent Misrepresentation
2. Pre-Meditated Attempted Murder
3. Bribery
4. Embezzlement
5. Abuse and Exploitation of Vulnerable Adults
6. Wire Fraud
7. Securities Fraud
8. Insurance Fraud
9. Accounting Fraud
10. Forgery
11. Conflict of Interest
12. Intentional Infliction of Emotional Abuse
13. Breach of Fiduciary Duty
14. Extortion
15. Tampering with Witnesses
16. Interference with an Inheritance
17. Tortious Interference with Economic Relations
18. Aiding and Abetting
19. Obstruction of Justice
20. Falsifying Court Documents
21. Conversion
22. Defamation of Character
23. Blackmail
24. Interference with Marital Relations
25. Unlawful Seizure of Property

**NOT ONE OF THESE ALLEGATIONS HAS BEEN CHALLENGED BY PLAINTIFFS.**

Despite the associated list of alleged crimes, the court refuses to not require the most basic item entitled to Defendant, statutory accounting. Instead, it permits a complaint such as the one herein which is unquestionable one more retaliatory act against victims whose only crime is to know the truth and demand assets unlawfully removed be returned to him. Plaintiff would ask the court exactly what it is it expects of him if not to fade silently into the night; homeless and destitute. What is the real purpose of the litigation herein if not to rob Plaintiff of precious time and money while being denied the right to the due process of law.

For years, simple threshold questions have remained unresolved. They have not remained unresolved because they are too complicated. They have remained unresolved because they are too dangerous. Defendant has repeatedly asked whether governing documents were followed,

whether fiduciary duties were honored, whether amendments were validly executed, whether authority truly exists for those asserting control, and whether those who have accused him of fraud can state, with particularity, what the alleged fraud is. Yet those questions remain unanswered while Defendant's income has been cut off, his records withheld, his authority erased, and his family pushed toward financial collapse.

---

## I. THIS CASE HAS BECOME A TEST OF WHETHER POWERFUL INSTITUTIONS CAN EVADE THE LAW THROUGH DELAY, SILENCE, AND PROCEDURAL SHELTER

The public is told that courts exist to resolve disputes. Yet the record reflects something far more troubling: a prolonged pattern in which the decisive questions are never reached, the underlying documents are never squarely confronted, and the parties with money, counsel, institutional protection, and political insulation are permitted to continue acting as though their authority were settled while the party challenging them is forced to survive on fragments.

Plaintiff has described, in a detailed timeline in exhibits already included as evidence within the court, a chronology beginning in 2013 and continuing through the present, involving estate planning, trust amendments, disputed transfers of authority, removals from fiduciary roles, denials of accounting, and later retaliation in both civil and personal form. The timeline describes, among other events, the introduction of Craig McCullough in 2013, the 2015 and 2016 trust structures, the December 8, 2017 governance changes, the April 17, 2018 trust amendment, the February 11, 2019 conflict disclosure, the March 20, 2019 complaint, the May 21, 2019 removals, the 2024 vexatious-litigant order, and the March 6, 2026 cutoff of Defendant's income.

What matters here is not whether every allegation has already been adjudicated. They have not. That is the point. What matters is that the central issues have been persistently avoided while severe consequences have continued in real time. When a court system repeatedly avoids the underlying question of authority, while permitting one side to continue acting under disputed authority, that system ceases to function as a neutral referee and begins functioning as a shield.

## II. THE RECORD IS NOT ABOUT A MERE BUSINESS DISAGREEMENT. IT IS ABOUT WHETHER THE LAW APPLIES EQUALLY TO THOSE CLOSEST TO INSTITUTIONAL POWER

The law firm at the center of these events is not, according to Defendant's position, just any law firm. It is Kirton McConkie, a firm Defendant contends acts as legal arm and agent for the LDS Church and whose exposure would therefore create consequences far beyond a private malpractice dispute. Defendant's contention is that the extraordinary resistance to answering direct questions exists precisely because the truth, if exposed, would not stop with a few attorneys. It would extend upward into institutional liability, reputational collapse, and public scrutiny of how power has been exercised behind the veneer of legal formality.

Attorney Greg Moesinger in his role of concealing the crimes via thousands of pages of court filings is clearly manipulating the court and everyone involved to obey whatever motion he files. Within the case herein, he is not only counsel for four of the Plaintiffs, he himself is a Plaintiff in a related filing, a Defendant, and a beneficiary of proceeds being paid by defendant's own entities. And yet not one of the dozens of judges who have reviewed this case can seem to identify any conflict of interest.

Whether that larger contention is ultimately proven is for proper proceedings. But what cannot be ignored is that the pattern is entirely consistent with institutional preservation: deny hearings, deny accountings, avoid yes-or-no answers, force pro se exhaustion, weaponize labels, and let economic pressure do what argument cannot. That is why this case matters beyond Eliason Eight, beyond one trust, beyond one family.

If the allegations are false, they can be disproven through documents, accounting, testimony, and direct answers. If the allegations are true, then what has occurred is staggering. If the allegations are serious enough that neither side should proceed without clarity, then continued silence is intolerable. The only position no court should be allowed to take is this one: that the questions are too dangerous to answer, but the retaliation may continue anyway.

## III. THE COURTS HAVE BEEN PRESENTED WITH SIMPLE QUESTIONS FOR YEARS, YET THE CONSEQUENCES HAVE FALLEN ONLY ON THE FAMILY ASKING THEM

Plaintiff's central grievance is not that he has lost every ruling. It is that the decisive questions have never been forced into the open. He asks whether the governing document dated December 8, 2017 controls the authority of Eliason Eight, LLC and whether later removals and replacements complied with it. The December 8, 2017 filings identify managers and state that the act of at least three managers is required for disbursements outside the ordinary course of business and for transfer-related acts affecting real property interests.

> 8    General Management of the Company   The business and affairs of the Company shall be managed by Managers   Except as set forth below relating to real property, the Managers are authorized to enter into any and all transactions on behalf of, or otherwise act for or bind, the Company   The authority of the Managers to bind the Company is not limited   Notwithstanding, and except as set forth below relating to real property, a majority vote of the Managers with each Manager getting one vote, shall control   If an even number of Persons are serving as Managers and such Managers are unable to take action or make a decision because of a disagreement or dispute, such decision may be made by a vote of Members owning a Super Majority (75%) Interest   The act of at least three (3) Managers is required to make any disbursements not incurred in the ordinary course of the Company's business

This was taken from the Amendment filed on December 8th, 2017 with the following listed managers; Brett L Eliason, Lisa Stephens, and Mark Eliason.

## QUESTION 1: MANAGER STATUS

Does the following Amended and Restated Certificate of Organization of Eliason Eight, LLC identify Brett L Eliason as one of the three managers?

☐ YES
☐ NO

**AMENDED AND RESTATED
CERTIFICATE OF ORGANIZATION
OF
ELIASON EIGHT, L.L.C.**

RECEIVED

DEC 0 8 2017

Utah Div. of Corp. & Comm. Co

The undersigned, acting as Managers of this Utah limited liability company (the "Company") under the Utah Revised Limited Liability Company Act (the "Act"), adopt the following Amended and Restated Articles of Organization for the Company:

1. The name of the Company is **Eliason Eight, L.L.C.** The Articles of Organization for the Company were originally filed on April 2, 1970 as Entity No. 4994239-0160.

2. The Principal Office Address of the Company is as follows:

> 2183 East 3780 South
> Salt Lake City, Utah 84109

3. The name and street address of the Company's registered agent are as follows:

> Lisa E. Stephens
> 2183 East 3780 South
> Salt Lake City, Utah 84109

4. The business and affairs of the Company shall be managed by Managers. The name and address of each Manager of the Company are as follows:

> Joyce S. Eliason
> 4349 Lynne Lane
> Salt Lake City, Utah 84124

> Brett L. Eliason
> 43 Fairview Way
> North Salt Lake, Utah 84054

> Mark D. Eliason
> 3221 South Kenwood Street
> Salt Lake City, Utah 84106

DEC 8 '17 PM4:33

If the answer is yes and Brett L Eliason is named as one of the three surviving managers; every decision such as removing a manager or paying Kirton McConkie millions must be approved by him.

## SUBSEQUENT AMENDMENT (MANAGER REMOVAL)

Plaintiffs executed a subsequent amendment on November 23rd, 2020 removing and replacing Defendant, without approval, and ignoring the governing document dated December 8th, 2017.

RECEIVED

NOV 30 2020

Utah Div. of Corp. & Comm. Code

### AMENDMENT TO THE
### CERTIFICATE OF ORGANIZATION OF
### ELIASON EIGHT, L.L.C.

This Amendment to the Certificate of Organization of Eliason Eight, L.L.C. (the "Company") is made effective the 23rd day of November, 2020, by Mark Dean Eliason, Lisa Eliason Stephens and Jason P. Stephens, the Managers (the "Managers").

1.    The name of the Company is Eliason Eight, L.L.C. The Certificate of Organization for the Company was originally filed on October 11, 2001 as Entity No. 4994239-0160.

2.    Section 4 is hereby amended in total to read as follows:

4.    The business and affairs of the Company shall be managed by Managers. The name and address of each Manager of the Company are as follows:

Mark D. Eliason
3221 South Kenwood Street
Salt Lake City, Utah 84106

Lisa E. Stephens
2183 East 3780 South
Salt Lake City, Utah 84109

Jason P. Stephens
2183 East 3780 South
Salt Lake City, Utah 84109

3.    Except as amended above, the Certificate of Organization of Eliason Eight, L.L.C. is ratified.

4.    The effective date of this Amendment to the Certificate of Organization is the 23rd day of November, 2020 or, if later, the date this Amendment to the Certificate of Organization is filed with the Division of Corporations and Commercial Code of the Utah Department of Commerce.

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certified that the foregoing has been filed and approved on this 23 day of Nov 2020 in the office of this Division and hereby issued This Certificate thereof.

Examiner ___RDL___ Date 12/01/20

## QUESTION 2:

Is it Defendants' position that the removal and replacement of Defendant as a manager was **performed in compliance with the governing document dated December 8, 2017?**

☐ YES
☐ NO

## DEFENDANT'S FEBRUARY 6, 2026 AMENDMENT

Defendant filed an amendment on February 6, 2026, clarifying that the December 8, 2017 governing document remains controlling, as part of his fiduciary duty to protect the company's interests.

**AMENDMENT TO CERTIFICATE OF ORGANIZATION**
**ELIASON EIGHT, L.L.C.**

Pursuant to the Utah Revised Uniform Limited Liability Company Act and the records of the Utah Division of Corporations and Commercial Code, the undersigned hereby submits this Amendment to clarify and restate the governing authority applicable to Eliason Eight, L.L.C. (the "Company").

1. **Governing Amendment.**
   The Company's *Amended and Restated Certificate of Organization*, effective December 7, 2017 and received by the Utah Division of Corporations on December 8, 2017, constitutes the last duly authorized and properly executed amendment to the Company's governing documents (the "2017 Amendment").

2. **Execution Requirements.**
   The 2017 Amendment expressly provides that amendments to the Company's organizational and governing documents require execution and authorization by all Managers of the Company.

3. **Subsequent Filings.**
   Any filings or amendments submitted to the Division subsequent to December 7, 2017 that were not executed in accordance with the execution requirements set forth in the 2017 Amendment were not authorized pursuant to the Company's governing documents.

4. **Clarification of Record.**
   Accordingly, the Company hereby provides notice that the 2017 Amendment remains the controlling and operative governing document of Eliason Eight, L.L.C., and that any subsequent filings not properly authorized should not be relied upon as reflecting valid amendments to the Company's governance or ownership structure.

5. **No Other Changes.**
   Except as expressly stated herein, no other provisions of the Company's Certificate of Organization or governing documents are amended by this filing.

This Amendment is submitted solely for purposes of record clarification and administrative accuracy.

Executed on this 6th day of February, 2026.

FEB 6 '26 PM1:46

**Brett L. Eliason**
Manager, Eliason Eight, L.L.C.
Date: _____

## QUESTION 3:

Is it Defendants' position that Defendant's February 6, 2026 filing constitutes **fraud**?

☐ YES
☐ NO

The following is a letter from Greg Moesinger as counsel in the same matter he is both a Plaintiff and a Defendant, using extortion and claiming that Defendant has committed fraud and a criminal investigation would be open, and all distributions halted.

## KIRTON | McCONKIE

Gregory S. Moesinger
36 S. State Street, Suite 1900 Salt
Lake City, UT 84111
gmoesinger@kmclaw.com
801-328-3600

March 6, 2026

**Via U.S. Mail**

Brett L. Eliason
634 Ridge Top Lane
North Salt Lake, Utah 84054

**Via Email**

Brett L. Eliason
brett.eliason1@gmail.com

RE:   Eliason Eight, LLC v. Brett L. Eliason

Dear Mr. Brett Eliason:

As you know, I represent Eliason Eight, LLC, a Utah limited liability company ("Eliason Eight"). I have received your email inquiries regarding upcoming payments or distributions from Eliason Eight to you, as a member. Your inquiries are not well-received.

Eliason Eight has just discovered that, on or about February 6, 2026, you submitted or filed with the Utah Department of Commerce, Division of Corporations, an unauthorized and false Amendment to Certificate of Organization as to Eliason Eight (the "False Amendment"), as well as an unauthorized and false Statement of Change of Registered Agent as to Eliason Eight (the "False Statement of Change"). I have enclosed those documents, as filed, for reference.

Moreover, we have discovered that you then proceeded to submit the False Amendment, False Statement of Change, and/or other documentation to companies or entities that are obligated to pay Eliason Eight periodic payments, with instructions for them to change the account contact information, notice address, and payment instructions, such that future payments would be made directly to you and/or your entity, instead of coming to Eliason Eight. We are aware that you have done this on at least three occasions, with respect to Kinder Morgan, Crescent Energy, and SM Energy. We are also aware of your contact with Finley Resources.

You have not only interfered with Eliason Eight's economic and contractual relations, and breached the operating agreement and other duties to the company, but you have also committed a fraud, attempted to divert and steal funds that belong to the company, as well as provided false documents to a government agency. You have caused significant damage to Eliason Eight. At least Kinder Morgan and Cresent Energy (and potentially others) have suspended the accounts because of your submissions, such that they are now withholding payments that would otherwise come due and payable to Eliason Eight because of the confusion. Your fraudulent conduct, wrongdoing, and malfeasance are wholly unacceptable.

Brett L. Eliason
Re: Eliason Eight, LLC
March 6, 2026

SALT LAKE CITY, UT | LEHI, UT | ST. GEORGE, UT | BOISE, ID | KMCLAW.COM

Page 2 of 2

First, demand is hereby made that you immediately withdraw the False Amendment and False Statement of Change from the Utah Department of Commerce.

Second, demand is hereby made that you immediately withdraw, revoke, or otherwise rescind any of your correspondence or submissions to any vendor or obligor of Eliason Eight, including to Crescent Energy, SM Energy, Finley Resources, and Kinder Morgan, to decrease your interference and to help alleviate the situation that you have caused. You must also provide the names of all the companies or entities that you contacted, so that Eliason Eight may properly address the issue with them to mitigate the damages or losses.

Third, where Eliason Eight is just learning of your fraud and is only beginning to conduct its investigation into this matter, Eliason Eight will not make additional distributions to you until this has been fully investigated, its damages ascertained, and your misconduct remedied. Among other relief and recourse, Eliason Eight will exercise its right of offset (or setoff) of its damages and losses against any amounts that would otherwise come due to you or any assignee. This includes, but is not limited to, all of Eliason Eight's attorneys' fees and costs, added administrative fees, and accounting fees, incurred as a result of your actions. Eliason Eight also reserves its rights to file a lawsuit against you, including for declaratory relief, punitive or exemplary damages, forced sale, and/or the forfeiture of your membership.

Fourth, your conduct is criminal and violates state and likely federal laws (having crossed state lines). At a minimum, it appears that you have engaged in fraud, theft or attempted theft, and provided false information to a government agency under Utah Code § 76-8-506. As part of its investigation, Eliason Eight intends to refer your fraudulent and criminal conduct to the police and/or other authorities for prosecution.

Your cooperation in correcting your false submissions may help curtail Eliason Eight's damages and injuries, for which you are ultimately responsible. Govern yourself accordingly.

Very truly yours,

KIRTON McCONKIE

Gregory S. Moesinger

# QUESTION 3: CO-SETTLOR STATUS

Is it the Court's opinion that the above letter issued by Plaintiff/Defendant/Counsel/Beneficiary does not demonstrate extortion and blackmail, and intended to strip victim of his last asset and only source of income?

☐ YES
☐ NO

If the answer is no, then it follows common logic that Defendant's income be reinstated immediately without delay. If the answer is yes, the reason must be justified in writing.

Plaintiff have asked whether the March 6, 2026 accusation of "fraud," "attempted theft," and false filings can be stated with specificity, including the exact act, damages, and identity of the claimed investigation. In that letter, counsel for Eliason Eight accused Defendant of fraud, attempted diversion of funds, interference with company payments, and criminal conduct, while also stating that distributions would not be made until the matter was "fully investigated" and damages ascertained.

Plaintiff also has asked whether his February 6, 2026 filing was in fact a fraudulent filing or instead a clarification asserting that the December 8, 2017 amendment remained the last duly authorized governing document. That filing expressly stated it was submitted to "clarify and restate the governing authority" and declared that the 2017 amendment remained the controlling document.

He has asked whether the Joyce S. Eliason Trust dated October 28, 2015 names Brett as a child-beneficiary class member and whether Max D. Eliason appears as co-trustee and spouse. The trust names Max D. Eliason as the Settlor's spouse, lists Brett Lynn Eliason among the Settlor's children, and identifies Joyce and Max as the original trustees. It also states that as to community property, the trust may not be amended without the mutual written consent of both the Settlor and the Settlor's spouse.

It was asked whether the Second Amendment of April 17, 2018 was executed by Max D. Eliason or whether his name even appears on the signature page. The Second Amendment, as provided, is made by "Joyce S. Eliason, the Settlor and Trustee," and the signature page shows Joyce alone as "Settlor and Trustee." It also rewrites trustee succession so that Lisa Eliason Stephens is next in line after Joyce. This has been identified by attorney Geroge Burbidge at Christensen Jensen as "jail time for Craig McCulloug," and yet the State of Utah and the Department of Justice cannot seem to see this as a criminal action.

Plaintiff has asked for beneficiary statements and accounting for years. The Joyce trust itself states that an individual trustee shall render an annual accounting if requested by at least one beneficiary and that the accounting shall be rendered to beneficiaries who are then permissible distributees. None of these are outlandish questions. They are basic questions. Governance questions. Fiduciary questions. Yet, what has followed these questions has not been answers. It has been escalation.

## V. THE HARM IS NOT ABSTRACT. IT IS DOMESTIC, FINANCIAL, PHYSICAL, AND DEEPLY HUMAN

The consequences are not sterile litigation entries. They are the disassembly of a life. The timeline describes the collapse of Defendant's company, repossession of vehicles, foreclosure events, hard-money borrowing, eviction from the home his mother purchased, psychiatric hospitalization, exclusion from his father, and the termination of the final income stream tied to Eliason Eight. And not one of these allegations has ever been challenged or denied.

The March 6, 2026 letter did not merely accuse. It announced leverage. It stated that Eliason Eight would not make additional distributions while it investigated, would offset claimed damages, and reserved rights to more litigation and even forced sale or forfeiture of membership. That is not just paper. It is the removal of food, transportation, shelter, insurance, and stability from a family while the underlying authority to do so remains contested.

When courts leave those threshold questions unresolved, they are not preserving neutrality. They are permitting one side to continue wielding disputed power while the other side bleeds. That is why this filing is broader than who controls Eliason Eight. Because the issue is no longer merely control. The issue is whether the judicial system will permit disputed control to be used as an instrument of private punishment while refusing to decide whether that control is legitimate in the first place.

---

## V. THE "VEXATIOUS" LABEL HAS BECOME A SUBSTITUTE FOR ANSWERING THE QUESTIONS

Plaintiff states that the March 11, 2024 vexatious-litigant order did not solve any substantive issue. It merely handed the opposing side and the courts a permanent procedural phrase to avoid confronting the merits. His timeline states that after Judge Kara Petit labeled him vexatious, other cases were closed and the label became the response used to avoid yes-or-no questions surrounding conflicts, accountings, and authority.

If that characterization is inaccurate, the cure is simple: answer the questions.

If it is accurate, then the label has become something far more troubling than a case-management tool. It has become a mechanism by which a citizen may be denied the substance of law while still being subjected to its force. A court may regulate abuse of process. It may not use a label as a substitute for due process itself.

No court should be comfortable with a record in which the same response repeats for years while the estate is never accounted for, the trustees never fully answer, the governance documents are never squarely tested, and the family asking for accountability is steadily stripped of home, business, money, and voice.

---

## VI. THE MOST DISTURBING FEATURE OF THIS RECORD IS NOT ANY SINGLE ALLEGATION. IT IS THE APPARENT WILLINGNESS OF THE SYSTEM TO LET THE ALLEGATIONS ROT IN PLACE WHILE PUNISHING THE PERSON RAISING THEM

There are allegations in Defendant's timeline that are grave, including allegations surrounding coercive trust amendments, undisclosed conflicts, elder exploitation, misuse of fiduciary authority, false allegations to authorities, wrongful deprivation of access to his father, and medical issues surrounding Joyce Eliason's final weeks. Plaintiff's timeline references alleged morphine issues, hospital records, and disputed amendments made in April and May 2018.

This Notice does not ask the Court to endorse each allegation as proven fact today. It asks the Court to confront the intolerable reality that allegations of this gravity have been met not with transparent adjudication, but with procedural burial, non-response, and retaliation. A functioning judiciary does not protect itself by refusing to look.

It protects itself by looking straight at the hardest facts first. Because if the allegations are exaggerated, sunlight cures them. If the allegations are false, sworn answers and evidence dispose of them. If the allegations are true, then delay is not neutrality. Delay is participation. That is the point from which the public recoils. Not merely that bad acts may have occurred. But that repeated pleas for adjudication were met with inertia while the cost was borne entirely by the alleged victims. That is how public faith dies.

Not in one spectacular act, but in years of watched suffering, unanswered questions, and the unmistakable appearance that some institutions are too important to be inconvenienced by the truth.

## VII. IF THE CORE EMBEZZLEMENT ALLEGATIONS ARE TRUE, THE SCALE WOULD BE ASTRONOMICAL. THAT IS EXACTLY WHY THE QUESTIONS ARE NOT BEING ANSWERED.

Plaintiff has asserted for years that the estate and trust-related assets involved are enormous and that the disappearance, transfer, and non-accounting of those assets would place the matter in a category of extraordinary misconduct if proven. His timeline characterizes the issue as potentially involving hundreds of millions of dollars and one of the largest fiduciary abuses imaginable.

Reasonable people may disagree with his estimates. But no reasonable court should read such allegations, coupled with years of no accounting, no transparent hearing on the merits, and direct accusations of fraud now being used to cut off his income, and conclude that the proper response is still delay. The larger the allegations, the more necessary the answers become. The larger the potential institutional exposure, the more dangerous silence becomes. Because once the public concludes that courts will not force answers where religion, political influence, or elite counsel are involved, then democracy itself begins to look ornamental. The message becomes unmistakable: the rules are for the weak, and the powerful will be protected until exposure becomes impossible to contain. That is not merely a family tragedy. That is civic damage.

## VIII. THIS COURT MUST UNDERSTAND WHAT IT LOOKS LIKE FROM THE OUTSIDE

From the outside, the picture is devastating.

A son asks for accounting. He is called vexatious.
A beneficiary asks for documents. He gets silence.
A family asks to keep its home. The system watches the eviction.
A son asks to see his dying father. Access is withheld.
A litigant asks direct yes-or-no questions. No one answers.
Then the same people accusing him of fraud cut off the income his family needs to survive.

And the courts still have not forced the basic questions to be answered.

That is not how justice looks to the public.
That is how protection looks.
That is how capture looks.
That is how an institution behaves when it believes exposure is more dangerous than continued harm.

Plaintiffs' timeline captures the cumulative effect plainly: he has been stripped of income, excluded from governance, denied records, accused of fraud, and left with no adjudicated answer to the authority question at the center of everything. If the public saw only one or two filings, it might look like obsession. If the public sees the whole chronology, it looks like a man screaming that his house is on fire while every agency with a hose debate whether he has filed too many complaints.

## IX. THE COURT CAN NO LONGER PRETEND THIS IS JUST A CASE OF DEFAMATION

The easy path is to reduce all of this to tone, to books, to filings, to personality, to "family dysfunction," to "overheated allegations," to "case management." But the March 6, 2026 letter alone proves that this is not a sealed historical quarrel. Counsel for Eliason Eight accused Plaintiff of fraud and criminal conduct and announced that his distributions would be withheld while they investigated and calculated damages. That is present-tense force. The December 8, 2017 governance documents remain central because they define whether later acts were authorized at all. Those documents show specific manager structure and multi-manager requirements for certain acts.

The 2015 trust and 2018 amendments remain central because they define whether succession and fiduciary authority were altered lawfully or not. The original trust names Joyce and Max as trustees, lists Max as spouse, includes Brett among the children, and contains mutual-consent language for community-property amendments. The later amendment appears to place Lisa Stephens next in line and is executed only by Joyce. Those are not side stories. They are the engine room of the case. If the Court avoids them, the Court avoids the case.

## X. REQUEST FOR SPECIFIC CLARIFICATIONS (YES / NO)

Plaintiff respectfully moves the Court for an order compelling Defendants to clarify their positions regarding the terms, of Trust documents and Amendments relating to the estate planning process of Max and Joyce Eliason. The questions are simplified, but their consequences devastating which is exactly why they are considered "vexatious."

Central to this case is a documented and admitted undisclosed conflict of interest, in which Defendants simultaneously purported to represent the settlors—Max and Joyce Eliason—while in fact representing a beneficiary whose interests were directly adverse. Below is Article 8.13 of the Joyce S. Eliason Trust dated October 28th, 2015 clearly identifying Craig McCullough and Kirton McConkie as the Settlors Counsel:

> 8.13 Notification of Attorney. If the Settlor has a serious illness or operation, the Settlor requests that the Trustees contact his attorney, Craig F. McCullough, KIRTON MCCONKIE, 50 East South Temple, suite 400, Salt Lake City, Utah 84111, (801) 328-3600, to obtain instructions in case the Settlor should die. If death makes this prior conversation impossible, then the Trustees should call said attorney as soon after death as possible.

> ARTICLE 9
> FORFEITURE

> If any beneficiary under this Trust, and any trusts herein created, or intended to be created, shall contest in any court, without probable cause, any provision of this trust agreement, the Trustee shall distribute such beneficiary's share of any distribution as if such beneficiary had predeceased the Settlor.

> IN WITNESS WHEREOF, the Settlor and Trustees have executed this trust agreement.

> Max D. Eliason,                                    Max Eliason
> Settlor and Co-Trustee

> Joyce S. Eliason,
> Co-Trustee

## QUESTION 4:

Is it the position of the court that the afore Section 8.13 of the Joyce S Eliason Trust state clearly that Craig McCullough represents Max and Joyce Eliason?

☐ YES
☐ NO

## ADMISSION OF REPRESENTATION AND UNDISCLOSED CONFLICT OF INTEREST

On February 23, 2019, attorney Thomas A. Mecham of Kirton McConkie confirmed in writing the scope of representation undertaken by the firm in connection with the estate of Joyce S. Eliason. In his email correspondence, Mr. Mecham expressly stated: "Craig McCullough of our office informed you that our firm represents your sister, Lisa Stephens, in her capacity as personal representative of your mother's estate and trustee of her trust."

**Thomas A. Mecham** <tmecham@kmclaw.com>                      Sat, Feb 23, 2019, 3:00 PM    ☆    ☺     ↩     ⋮
to George, Craig, me ▾

Dear Brett,

Thank you for your message. In our last (and only) meeting, I explained to you that we do not represent you and encouraged you to retain your own legal counsel, as the concerns you raised in our conversation clearly may affect your legal rights.

Following our meeting, Craig McCullough of our office informed you that our firm represents your sister, Lisa Stephens, in her capacity as personal representative of your mother's estate and trustee of her trust. Craig also sent you copies of Joyce's will and trust.

I am grateful to see that you have reached out to Mr. Burbidge. You will want to provide him with copies of the documents Craig recently sent to you. Once he has been engaged, I anticipate that Mr. Burbidge will reach out to Craig if he believes the issues you have raised have merit and should be brought to Lisa's attention. Of course, you may also reach out to Lisa directly.

Until you take these steps, however, there is nothing I can do for you, and there is no further reason to communicate with me or others occupying managerial roles within Kirton McConkie. Craig and Kirton McConkie represents Lisa. If you do not like something Lisa has done, the best person to consult is Lisa or Craig. Neither I nor anyone else at this firm (except for Craig) has any substantive knowledge regarding your mother's trust or estate. In other words, Craig will respond on behalf of, and has authority to speak for, Kirton McConkie.

The sense I get from your letter is that you are very concerned about this matter and that you are searching for anyone (including me) who might help you. I cannot help you because Craig and this firm has been hired to help your sister. You need to hire an attorney who is working on your behalf. This firm will respond to you or your attorney's concerns only through Craig. I cannot put it more simply than that.

I wish you all the best.

This statement constitutes a direct admission that Kirton McConkie was acting as legal counsel for Lisa Stephens in fiduciary roles tied to the estate and trust. However, this admission cannot be reconciled with the governing estate documents or with fundamental principles of fiduciary and trust law. The original trust instruments and last wills and testaments of Max D. Eliason and Joyce S. Eliason, both dated October 28, 2015, clearly establish that:

- Max D. Eliason was the **successor Trustee** upon the death of Joyce S. Eliason
- Brett L. Eliason and Max D. Eliason were named as **personal representatives**
- The trust explicitly identifies Kirton McConkie as attorneys to be contacted by the Trustees, meaning their role was to advise the Settlors and the duly appointed fiduciaries—not to supplant them

At the time of this email, Max D. Eliason was alive and had never lawfully relinquished his role as Trustee. No valid amendment existed that complied with the trust's execution requirements to remove him. Likewise, no lawful probate process had displaced him as a personal representative. Thus, Kirton McConkie's representation of Lisa Stephens in these fiduciary capacities necessarily required one of two conclusions:

- Either Max D. Eliason had been lawfully removed and replaced in accordance with the governing documents and applicable law; or
- Kirton McConkie knowingly disregarded the trust structure and assisted a beneficiary in assuming control without legal authority

**The documentary record establishes the latter.**

This conflict is further amplified by the firm's own internal contradiction. The trust provisions explicitly direct that Kirton McConkie serve as legal counsel to the Settlors and Trustees in administering the estate. Yet, in practice, the firm:

- Refused to communicate with Brett L. Eliason
- Denied representing him or his father
- Directed him to obtain separate counsel
- Instructed that all communications must go through Craig McCullough, who was simultaneously acting on behalf of Lisa Stephens

This creates a critical and unavoidable inference: If Kirton McConkie were truly representing Lisa Stephens **solely in her fiduciary capacity as Trustee or Personal Representative**, then their duties would run to the trust and estate as a whole, including all beneficiaries and co-fiduciaries. Under such circumstances, there would be no basis to exclude a co-equal beneficiary or named fiduciary from communication or require them to retain separate counsel merely to receive information about the administration of the trust.

However, Mr. Mecham's directive that Brett L. Eliason must obtain independent counsel—and that the firm would communicate only through Craig McCullough—demonstrates that Kirton McConkie was, in reality, representing Lisa Stephens in her **individual capacity as a beneficiary whose interests were adverse to other beneficiaries and fiduciaries**. This constitutes an undisclosed conflict of interest.

Under **Utah Rules of Professional Conduct Rule 1.7**, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, including where:

- The representation of one client will be directly adverse to another client; or
- There is a significant risk that the representation will be materially limited by responsibilities to another client

Further, under **Rule 1.13 (Organization as Client)** and well-established fiduciary principles, counsel representing a trust or estate must act in the best interests of the entity and its beneficiaries as a whole—not favor one beneficiary to the detriment of others.

Here, Kirton McConkie undertook representation that was:

- Adverse to the rightful Trustee (Max D. Eliason)
- Adverse to a named personal representative and beneficiary (Brett L. Eliason)
- Beneficial to a single individual (Lisa Stephens), whose authority itself is derived from disputed and invalid documents

The conflict was never disclosed, never waived, and never adjudicated. Instead, the firm now characterizes allegations of conflict as unfounded, despite their own written admission confirming the exact structure of representation that gives rise to the conflict. This leads to the same unavoidable legal conclusion presented throughout this Complaint:

- **If Kirton McConkie represented the trust and estate, then their exclusion of rightful fiduciaries and beneficiaries constitutes a breach of fiduciary duty and professional misconduct.**
- **If Kirton McConkie represented Lisa Stephens individually, then their actions in assisting her to assume control over the trust and estate constitute participation in a scheme to deprive other beneficiaries of their rights and interests.**

Either scenario establishes liability, and there is no lawful interpretation under which these actions are permissible. **This case is, at its core, remarkably simple.** It does not require complex legal analysis, prolonged discovery, or competing expert testimony. It turns on a single, fundamental question—one that Defendants have avoided for years, and one that no court has required them to answer:

## QUESTION 5:

**Do Defendants, including Kirton McConkie, claim to represent the interests of the Settlors, Max and Joyce Eliason, and the trusts created for the benefit of their heirs, while simultaneously representing and favoring one beneficiary to the exclusion of others?**

YES ☐      NO ☐

This is not a rhetorical question. It is a legal one. Because under well-established principles of fiduciary and trust law, the answer determines everything. This is what the principal of "Res Ipsa Loquitur" was designed for.

## The Legal Consequence of the Answer

**If the answer is yes,** then Defendants have admitted to an **undisclosed conflict of interest** (which they already have, but this supports it. Such a conflict is not a minor procedural defect. It is a fundamental breach of fiduciary duty that strikes at the heart of the attorney-client and trustee-beneficiary relationships. Under longstanding legal principles, including the **Restatement (Third) of Trusts** and governing fiduciary law:

- A fiduciary must act impartially among beneficiaries;
- An attorney cannot represent adverse interests without full disclosure and informed consent;
- Transactions arising from undisclosed conflicts are **voidable** and subject to rescission;

In such circumstances, the law requires that the parties be restored to the position they would have occupied: **as if the conflicted relationship had never occurred.**

This includes:

- unwinding transactions;
- restoring control of assets;
- imposing constructive trusts where necessary;

**If the answer is no,** then Defendants face a different but equally fatal consequence. Because the documentary evidence—including trust instruments and related filings—demonstrates that Defendants have repeatedly asserted authority over the trusts and estates of Max and Joyce Eliason. If Defendants now deny such representation, then they must explain:

- by what authority they controlled trust and estate assets;
- by what authority they excluded Plaintiffs;
- by what authority they withheld accounting and distributions;

Either position leads to liability.

THERE IS NO THIRD OPTION.

Notwithstanding the procedural posture of this case and any briefing schedules that may permit a twenty-one (21) day response period, the Court should recognize that Plaintiffs' injuries are not theoretical or prospective—they are ongoing and severe. Even assuming, arguendo, that Defendants attempt to justify delays based upon unresolved questions regarding certain asset classes, including oil and gas distributions, no legitimate explanation exists for the complete deprivation of Plaintiff Brett L. Eliason's inheritance.

Plaintiff's mother passed away in May of 2018, at which time her estate assets were distributed. Yet, to date, Plaintiff has not received nor been provided an accounting for a single dollar of those distributions. Following the death of Plaintiff's father in October of 2024, the same pattern has continued—no distributions, no accounting, and no justification. At no time have Defendants disputed that Plaintiff is a lawful heir and beneficiary. Accordingly, the continued withholding of all distributions, coupled with the complete absence of accounting, cannot be attributed to

legitimate estate administration. Rather, it reflects a deliberate and ongoing deprivation of Plaintiff's property rights.

The law does not permit a beneficiary to be indefinitely excluded from his inheritance under the guise of litigation, particularly where no findings of wrongdoing have been made and no lawful basis for withholding distributions has ever been articulated. Whether the Department of Justice elects to investigate or prosecute the conduct described herein, including alleged violations of federal RICO statutes, is a matter within its discretion. That issue, however, is not the primary focus of this action.

What is both striking and deeply troubling is the continued refusal of the judicial system to intervene in the face of clear and ongoing harm to Plaintiffs, and to require Defendants—including Kirton McConkie and affiliated entities—to perform the most basic legal obligation owed under trust and fiduciary law: to account for the estate they were engaged to protect.

The record reflects not only the absence of such accounting, but the systematic removal and control of assets through a network of trusts and related entities, coupled with years of retaliatory conduct directed at Plaintiffs. This Court is not being asked to resolve every allegation of wrongdoing, but rather to enforce the rule of law by requiring transparency, restoring accountability, and halting conduct that, if left unchecked, undermines the very foundation of fiduciary responsibility.

## QUESTION 6:

**Is it the court's opinion that Kirton McConkie and Craig McCullough have no conflict of interest despite Tom Mecham admitting to such in the afore mentioned email?**

YES ☐      NO ☐

## THE JOYCE S ELIASON TRUST DATED OCTOBER 28, 2015

Below is the first page of the Joyce S Eliason Trust dated October 28th, 2015 prepared by Craig McCullough of Kirton McConkie who were representing Lisa Stephens as the beneficiary at the time this was created.

### THE JOYCE S. ELIASON TRUST

This trust agreement is made and entered into this          day of OCTOBER          , 2015, by and between Joyce S. Eliason (the "Settlor"), of Salt Lake County, State of Utah, and Joyce S. Eliasomqnd Max D. Eliason (the "Trustee" or "Trustees").

The name of this Trust shall be The Joyce S. Eliason Trust (the "Trust").

Joyce S. bliason hereby transfers and delivers to the Trustees the property listed in the attached Schedules "A" and "B". The Trustees agree to hold this property and any other property which may be trånsferred to this Trust by either inter vivos or testamentmy transfer as part of the Trust. The Trustees agree to hold, administer and distribute all of the Trust's property according to the terms and     Conditions stated in this trust agreement.

### ARTICLE I
### FAMILY AND TRUST PURPOSE

1.1    Family. The family of the Settlor consists of the following:

IE;I .I Spouse of the Settlor :

Max D. Eliason

1.2 Children of the Settlor:

| NAMES | BIRTH DATES |
| --- | --- |
| Mark Dean Eliason | March 27, 1960 |
| lisa Eliason Stephens | January 9, 1962 |
| Brett Lynn Eliason | January 19, 1965 |

In this t%st agreement, the words "Settlor's children" refer to such children. The Trustees may rely upon these birth dates for all purposes.

1.2 Purpose of the Trust. The Settlor establishes this Trust for the primary benefit of the Settlor duriiåg the Settlor's lifetime, for the Settlor's surviving spouse, and for the Settlor's children and latér descendants thereafter.

## QUESTION 7: BENEFICIARY STATUS

Is Brett L. Eliason named as a beneficiary under the Trust dated October 28, 2015, and if so, is he entitled to accounting and beneficiary statements?

☐ YES
☐ NO

Below is the signature page of the Max and Joyce Eliason trust dated 10-28-15.

8.10 Age. A person attains a specific age (for example age twenty-one (21)) at the beginning of the day that begins the person's next year of life (for example the beginning of the person's twenty second (22nd) year of life). Any person whose birthday falls on February 29 shall be deemed to have a birthday on February 28 for all purposes of this Trust.

8.11 Number and Gender. The singular shall be interpreted as the plural and vice versa, if such treatment is necessary to interpret this Trust in accordance with the manifest intent of the Settlor Likewise, if either the feminine, masculine, or neuter gender should be one of the other genders, it shall be so treated. The term "Trustee" is used in the neuter singular throughout this trust agreement and applies to an individual trustee and to co-trustees.

8.12 Paragraph Headings. The paragraph and other headings are used for convenience and shall not be used in the interpretation of this trust agreement.

8.13 Notification of Attorney. If the Settlor has a serious illness or operation, the Settlor requests that the Trustees contact his attorney, Craig F. McCullough, KIRTON MCCONKIE, 50 East South Temple, suite 400, Salt Lake City, Utah 84111, (801) 328-3600, to obtain instructions in case the Settlor should die. If death makes this prior conversation impossible, then the Trustees should call said attorney as soon after death as possible.

ARTICLE 9
FORFEITURE

If any beneficiary under this Trust, and any trusts herein created, or intended to be created, shall contest in any court, without probable cause, any provision of this trust agreement, the Trustee shall distribute such beneficiary's share of any distribution as if such beneficiary had predeceased the Settlor.

IN WITNESS WHEREOF, the Settlor and Trustees have executed this trust agreement.

Max D. Eliason,
Settlor and Co-Trustee                                    Max Eliason

Joyce S. Eliason,
Co-Trustee

## QUESTION 8: CO-SETTLOR STATUS

Did Max D. Eliason execute the Trust dated October 28, 2015 as a Settlor and Co-Trustee?

☐ YES
☐ NO

Below is Section 6.1 taken from the Trustee Provisions of the Max and Joyce Eliason Trust dated October 18th, 2015 showing Max D Eliason as Successor Trustee.



48 8-7415-5034.1

### ARTICLE 6
### TRUSTEE PROVISIONS

6.1 <u>Trustee Succession</u>. The following will act as original Trustees, and as successor Trustees in the following order of succession:

(1) Joyce S. Eliason and Max D. Eliason. If either should cease or fail to serve, the survivor shall serve alone.

(2) Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason. If a Trustees should cease or fail to serve, the survivor(s) shall continue to serve.

(3) A Trustee chosen by the majority of the beneficiaries voting by right of representation as defined in Section 8.8.6, with the natural or legal guardian voting for legally disabled beneficiaries.

If a          Trus$ee fails to accept trusteeship or after becoming Trustee fails or ceases to serve as Trustee for anyreason, including disability; then the next listed Trustee shall automatically be appointed to serve as Trustee. In the discretion of the Trustee, additional Trustees may be added in the successi0!1 above indicated if more than the number of Trustees then serving is desired. If an institutional .trustee is appointed Trustee, then no successor Trustee to said institution need be appointed. A Trustee will be deemed to be disabled if the Trustee's physician writes a letter to the successor Trustee informing the successor Trustee that in the physician's opinion the Trustee is disabled.

Notwitlistanding the foregoing, after the death of the Settlor and the Settlor's spouse, each of the Settlor's children may upon his or her request therefore, serve as the sole Trustee of any trust establisheq for that child pursuant to the terms and conditions of Section 5.2. 1 .

Funherönotwithstanding the foregoing, after the death of the Settlor and the Settlor's spouse, each o%he Settlor's Primary Descendants after they reach the age of 35, may upon his or her request therefore, serve as the sole Trustee of any trust established for that Primary Descendant pursuant to the terms and conditions of Section 5.2.2.

A child's or Primary Descendant's right to become a Tntstee is a personal right and such right may not be voluntarily or involuntarily transferred by or to any other person.

c

## QUESTION 9: SUCCESSOR TRUSTEE STATUS

Is Max D Eliason named as the Successor Trustee in the above referenced document?

☐ YES
☐ NO

Below is the revised Second Amendment dated April 17th, 2018 executed by Joyce Eliason with Max D Eliason being removed as both Settlor and Successor Trustee:

3. Section 6.1 entitled "Trustee Succession" of the Trust is hereby amended in its entirety to read as follows:

6.1 Trustee Succession. The following will act as original Trustees, and as successor Trustees, in the following order of succession:

1. Joyce S. Eliason.

2. Lisa Eliason Stephens.

3. A Trustee chosen by each of Settlor's descendants who are over the age of 25 and are not legally disabled, voting by right of representation as defined in Section 8.8.6, so there is one Trustee serving from each family line, who shall serve jointly. If all of the descendants of a Settlor's child are under age 25, the then serving Trustees of the Trust shall select a Trustee to represent that family line until a descendant reaches age 25.

6.7 Dissent Among Trustees. When more than one Trustee is serving, the unanimous consent of all of the then serving Trustees, whether individual or corporate, shall be required to make any decision, undertake any action, or execute any document affecting the Trust.

5. Except as specifically herein amended, The Joyce S. Eliason Trust dated October 28, 2015 is hereby ratified and confirmed.

**IN WITNESS WHEREOF** the Settlor and Trustee has executed this Second Amendment to The Joyce S. Eliason Trust the day and year first above written.

**SETTLOR AND TRUSTEE:**

Joyce S. Eliason

STATE OF UTAH          )
                       : ss.
COUNTY OF SALT LAKE    )

On this 17 day of April, 2018, before me, Debra L. Demke, a Notary Public, personally appeared Joyce S. Eliason, the Settlor and Trustee, known to me or proved on the basis of satisfactory evidence to be the person whose name is subscribed to in the foregoing Second Amendment to The Joyce S. Eliason Trust, and acknowledged she executed the same.



DEBRA L. DEMKE
Notary Public
State of Utah
Comm. No. 679033
My Comm. Expires Aug. 29, 2018

Notary Public
Residing in Salt Lake County, Utah

## QUESTION 10: FRAUDULENT REMOVAL OF MAX D ELIASON

Is it legal for Craig McCullough to remove Max Eliason as Settlor and Successor Trustee without his "client's" approval?

☐ YES
☐ NO

Below is an electronic Waiver of Notice and Renunciation of Right to Serve as Personal Representative executed by Craig McCullough with "permission" from Max D Eliason. This while Craig McCullough did not represent Max Eliason while claiming Max had Alzheimer's Disease.

Craig F. McCullough, USB No. 2166
KIRTON MCCONKIE
50 East South Temple, Suite 400
Salt Lake City, Utah 84111
(801) 323-5938
cmccullough@kmclaw.com
*Attorneys for Applicant*

IN THE THIRD JUDICIAL DISTRICT COURT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| IN THE MATTER OF THE ESTATE OF<br><br>JOYCE STILLMAN ELIASON,<br>AKA JOYCE S. ELIASON,<br><br>Deceased. | **WAIVER OF NOTICE AND RENUNCIATION OF RIGHT TO SERVE AS PERSONAL REPRESENTATIVE**<br><br>Probate No. 183901323<br>Judge Elizabeth A. Hruby-Mills |
|---|---|

1.    With regard to the above estate, the undersigned is an interested person.

2.    The undersigned hereby waives notice of all petitions, applications, and filings concerning the above estate.

3.    The undersigned renounces any and all right that the undersigned has to serve as personal representative, and consents to the appointment of Lisa Eliason Stephens as personal representative.

DATED:  June 18, 2018

/s/ Max D. Eliason

Max D. Eliason
*Signed by Craig F. McCullough with permission of Max D. Eliason*
4349 Lynne Lane
Salt Lake City, Utah 84124
(801) 277-5677

## QUESTION 10: FORGERY

According to the court, does this represent abuse and exploitation of Max D Eliason?

☐ YES
☐ NO

If the answer is yes, should Craig McCullough be in prison; if no, why not?

☐ YES
☐ NO

## X. THE COURT IS NOW ON NOTICE THAT FURTHER DELAY CARRIES ITS OWN CONSEQUENCES

This filing exists so that there can be no future claim that the ongoing harm was somehow invisible, hypothetical, or insufficiently explained.

The Court is on notice that Defendant contends:

- the key authority questions remain unresolved;
- the fiduciary accounting issues remain unresolved;
- the fraud allegations made against him remain undefined;
- his family is suffering immediate and escalating financial harm;
- and the continuing refusal to force direct answers is producing the appearance, and perhaps the reality, of institutional protection at the expense of lawful process.

If the Court acts, then the process can begin to recover legitimacy. If the Court does not act, then the record will reflect that while a family said its home, income, and survival were being destroyed in real time, the judicial system still declined to force basic answers to basic questions. That is no longer a private embarrassment. That is a public indictment.

## XI. CONCLUSION

Defendants have made serious allegations of fraud and criminal conduct in a clear display of gaslighting. They must now either: substantiate those claims or withdraw them. They cannot do neither.  This case has reached a point where the Court's intervention is no longer a matter of ordinary case management—it is necessary to prevent ongoing and compounding harm.

Defendant Brett L. Eliason stands in a position no litigant should occupy:

- stripped of income from a company in which he is a documented member and former manager;
- excluded from governance under disputed and unproven authority;
- denied access to financial records; and
- accused of fraud for actions taken to enforce compliance with the Company's governing documents.
- Refused statutory accounting and beneficiary statements for over a decade.

At the same time, the parties asserting control over Eliason Eight, LLC have:

- refused to produce documentation establishing their authority;
- continued to exercise unilateral control over company funds; and
- conditioned Defendant's financial survival on his submission to their demands.

This is not a hypothetical harm. This is not a future risk. This is a **present and ongoing deprivation of rights and resources**, occurring in real time while this matter remains pending before the Court. What makes this moment particularly significant is that the central issue is not complex: **Who has lawful authority to control Eliason Eight, LLC?**

That question is governed not by speculation or accusation, but by written documents already before the Court. The December 8, 2017 governing instrument establishes specific requirements for management authority and decision-making. Those requirements are not optional. They define the legitimacy of every subsequent action taken in the name of the Company.

This case is not a question of whether Kirton McConkie and Craig McCullough are guilty of dozens of crimes identified under RICO and Racketeering, but rather if justice for victims is possible in such a world strangled by corruption.

# EXHIBIT B

## TIMELINE – MAX AND JOYCE ELIASON ESTATE PLANNING FROM MAY 2013-PRESENT

# Timeline – Max and Joyce Eliason Estate Planning

| | |
|---|---|
| **June 19th, 2013**<br>**(Exhibit A)** | Max and Joyce Eliason introduced to Craig McCullough by Bryan Stephens under Fraudulent Misrepresentation claiming McCullough had represented Joyce's brother; Larry Stillman. Max and Joyce request a simple 33/33/33 division of their estate. |
| **October 28th, 2015**<br>**(Exhibit B)** | Max and Joyce Eliason execute the Max and Joyce Eliason A/B irrevocable trust separating their assets into separate entities. Both are named as co-settlors and successor trustees. (Kirton McConkie refuses to provide copy of trust today). |
| **December 30th, 2015**<br>**(Exhibit C)** | The Eliason 2015 Trust is created essentially giving Craig McCullough unlimited rights as Trust Protector; including the right to transfer all assets from the Max and Joyce Eliason A/B Trusts created two months earlier, and giving him ability to make himself a beneficiary of Max and Joyce Eliason. |
| **November 2nd, 2016**<br>**(Exhibit D)** | Craig McCullough holds meeting at the Stephens residence without the consent of Max and Joyce Eliason essentially removing $1.7M of assets from Brett L Eliason. |
| **November 7th, 2016**<br>**(Exhibit E)** | Joyce Eliason sends scathing letter to Craig McCullough regarding undisclosed meeting and informing him he is to never allow Bryan Stephens to participate in any meetings concerning her estate. (Craig McCullough was secretly representing him and Lisa Stephens without her knowledge). |
| **December 22, 2016**<br>**(Exhibit F)** | The Eliason 2016 Trust is created with Craig McCullough indicating it was "better" than the Eliason 2015 Trust. It essentially transferred 55% of Eliason Eight, LLC into this Trust where tens of millions of dollars have flowed without authority and without disclosure of who is receiving distributions. Monthly transfers continue to this day. |

| November 2017 | Joyce Eliason informed chemotherapy is no longer having effect and had weeks to live. |
|---|---|
| **December 8th, 2017** (Exhibit G-I) | Joyce Eliason demands Craig McCullough prepare amendments to Eliason Eight, LLC; Eliason Enterprises, LLC; and the Eliason 2016 Trust requiring unanimous approval for all actions by managers Mark Eliason, Lisa Stephens, and Brett Eliason |
| **February 20, 2018** (Exhibit J) | Joyce Eliason send Brett Eliason text stating she is "protecting him from his jealous siblings" |
| **February 27th, 2018** (Exhibit K) | Joyce Eliason and Brett Eliason execute lease for property in Trolley Square to open store they had worked on together since June 2016. Exhibit proves Joyce Eliason executed document knowingly and with excitement to see her store open before she passed away. |
| **April 15th, 2018** (Exhibit L-M) | Joyce Eliason sends Brett Eliason text stating she is having allergic reaction to morphine. Medical records from Huntsman Hospital show it was never prescribed. Doctor Wallace Akerly attested he did not prescribe because is slows patients breathing. |
| **April 17th, 2018** (Exhibit N) | Craig McCullough and Lisa Stephens force Joyce Eliason to execute the Second Amendment to the Joyce S Eliason Trust dated October 28th, 2015. Document transfers $6M from the Eliason 2016 trust into an admittedly non-existent trust, removes Max as co-settlor and successor trustee, and transfers Joyce's investment accounts to Lisa Stphens. Document is considered void without the approval of Max D Eliason, and the obvious fact Craig McCullough represented Lisa Stephens personally. |
| **April 18th, 2018** (Exhibit O) | Lisa Stephens sends Brett Eliason email expressing her mother is having "a really sick day" |
| **April 19th, 2018** | Craig McCullough as an agent of Kirton McConkie and the LDS Church; forces Joyce Eliason to execute the Second Amendment to the Joyce S Eliason Trust dated 10-28-2015 unlawfully putting his client Lisa Stephens in complete control of the estate of Max and Joyce |

3

| | |
|---|---|
| | Eliason. It was executed with the signature of Max Eliason as a co-settlor thereby making this Amendment void. |
| **April 20, 2016**<br>**(Exhibit P - Q)** | Lisa Stephens sends email to Brett Eliason stating Joyce Eliason had flu-like symptoms for the prior three days; a symptom of someone experiencing a morphine overdose. She further tells Brett to not come over to stay with Joyce that night, but if he did; he was to turn down her oxygen. |
| **April 21st, 2018**<br>**(Exhibit R)** | Joyce Eliason falls into a coma and is rushed to the Huntsman Cancer Hospital. Brett sends urgent email to Lisa Stephens explaining his mother being cold and vomiting; signs of Morphine overdose. |
| **April 21st, 2018**<br>**(Exhibit S)** | Lisa tells staff at Huntsman her mother has a "DNR" in place. Brett reminds her that Joyce stated clearly at the first meeting with Craig McCullough that she wanted to be kept alive if there was one brain cell functioning. |
| **April 26th, 2018**<br>**(Exhibit T)** | Joyce Eliason comes out of her coma and is finally lucid. The first thing she asked Brett is "what did I sign Brett, Lisa said it was a Diamond Trust of some kind" and her brother Larry Stillman had read and approved. |
| **April 26th, 2018**<br>**(Exhibit U)** | Brett sends Lisa text asking about Trust, to which Lisa responded it was an education Trust which can make loans and she was "really proud of it." |
| **April 26th, 2018** | Brett Eliason goes to see Craig McCullough at Kirton McConkie demanding a copy of what his mother had signed. Mr. McCullough refuses to provide but assures Joyce it would be reversed through subsequent documents. |
| **May 4th, 2018**<br>**(Exhibit V)** | Craig McCullough delivers the Third Amendment to the Joyce S Eliason Trust dated October 28th, 2015 and claims Larry Stillman had approved. It would be revealed this document merely expanded the |

| | |
|---|---|
| | powers of Lisa Stephens and was once again done without the approval of Max D Eliason. |
| **May 18th, 2018** (Exhibit X) | Bryan and Lisa leave for a family vacation to Sweden sending back pictures of them smiling as if they had won the lottery. |
| **May 19th, 2018** | Joyce Eliason is rushed to University of Utah hospital under extreme duress with very shallow breathing. |
| **May 21st, 2018** | Joyce Eliason dies at the age of 84 years old. Among her last words to Brett were "Lisa is a crook and concealing the evidence, check the wires between her and McCullough." A dying declaration the courts refuse to respect. |
| **June 18th, 2018** (Exhibit Y) | Craig McCullough sends an electronic document to the court as a "recission of rights as Personal Representative" claiming Brett Eliason and Max Eliason gave him permission to remove them. |
| **September 17th, 2018** (Exhibit Z) | Brett's business partners (John Bair, Zac Bair, Bob Bair, and Pauline Bair) from My 3-D ME "quit as partners taking all technology and intellectual property with them. It would be discovered Lisa had worked in conspiracy with the Bairs to destroy Brett's livelihood. |
| **October 2018** | Brett secures a $1M hard money loan against his primary residence at with $100K fee and interest at 12%. This hopping to save his company and generate cash flow for his family. |
| **June 2018 – February 2019** | Brett contacts Craig McCullough and Lisa Stephens on multiple occasions seeking information and accounting for his mother's estate. (The only response given was "it is very complicated and would take more time). |
| **February 10th, 2019** | Brett visits his uncle Larry Stillman to inquire why Craig McCullough (who we believed was his estate planning attorney) was not |

5

| | |
|---|---|
| | responding. Mr. Stillman indicated "I have never heard of Craig McCullough.) |
| **February 11th, 2019** | Brett visits Kirton McConkie and demands to see Craig McCullough. Tom Mecham introduces himself as Craig's manager and states "I am sorry we have to meet under these conditions, but we have an undisclosed conflict of interest and you and your father will need to sue us to protect your interests." |
| **February 18th, 2019** (Exhibit AA) **February 21st, 2019** (Exhibit BB) | Brett Eliason sends letter to Tom Mecham as a plea for help. Lisa Stephens withdraws final $637,958 (of $6M) from the Eliason 2016 Trust without approval or authority. This was going to be the source of legal fees necessary to sue Kirton McConkie thereby forcing Max and Brett Eliason into a pro-se situation. |
| **February 23rd, 2019** (Exhibit CC) | Tom Mecham responds to letter dated February 18th, 2019 and admits in writing that Craig McCullough represents Lisa Stephens and not Max and Joyce Eliason or Brett Eliason |
| **February 23rd 2019,** | Tom Mecham tells Craig McCullough to forward relative Trust documents to Brett Eliason, which included The Eliason 2015 Trust, The Eliason 2016 Trust, and the Joyce S Eliason Trust. All requests for beneficiary statements and accounting are refused. Statement in Trust makes Lisa Stephens as the Personal Trustee sole beneficiary of undisclosed insurance policies which existed on Joyce Eliason. Tells Brett to deal with Craig and Lisa going forward. |
| **March 1st, 2019** (Exhibit DD) | Craig McCullough sends email stating he nor Lisa would communicate further with Brett Eliason and to secure an attorney. This following Brett's inquiry as to if Lisa knew anything about an entity named "Soul Capture" which was the new name of the website of My 3-D ME. |
| **March 2nd, 2019** (Exhibit EE) | Brett Eliason sends 8-page letter to Craig McCullough explaining in detail the need for the situation to be resolved immediately, as the failure of My 3-D ME was imminent. He never responded. |

| March 19th, 2019 (Exhibit FF) | Brett Eliason sends letter to Craig McCullough and Kirton McConkie once again pleading for direction with the imminent financial collapse of My 3-D ME. It was never responded to. |
|---|---|
| March 20th, 2019 (Exhibit GG) | Under the direction of Max Eliason who was still very lucid, Brett and Max file complaint against Kirton McConkie under Judge Adam Mow of the Third District Court of Salt Lake County demanding justice and the accounting of the estate of Max and Joyce Eliason. It would later be dismissed with prejudice without a hearing or a jury trial. |

| March 28th, 2019 (Exhibit HH) | Attorney R. David Bishop makes appearance on behalf of Max D Eliason instead of Kirton McConkie and issues a scathing cease and desist order informing Brett Eliason he would be trespassing and stalking if he visits his own father. It implies Brett was abusing his father financially and emotionally. |
|---|---|
| April 2nd, 2019 (Exhibit HH) | Brett is instructed to contact only Greg Moesinger and Chris Hill as in-house counsel. A 20-page letter is sent once again with pleas for help and transparency. No response was ever offered. |
| April 6th, 2019 (Exhibit II) | Letter sent to Chris Hill once again pleading for help and direction as to how to proceed and restore the estate of Max and Joyce Eliason. No response was given. |
| April 7th, 2019 (Exhibit JJ) | Max Eliason writes check in the amount of $10k with intention of engaging George Burbidge of Christensen Jensen who had reviewed the fraudulent documents and announced "This is jail time for Craig McCullough." It was the only amount Lisa Stephens had left in her father's account after draining over $200K |
| April 13th, 2019 (Exhibit KK) | At the request of Max Eliason, Brett emails Chris Hill, Greg Moesinger, and Craig McCullough demanding an immediate meeting to discuss where his and his wife's assets were and a break-down of fees paid to McConkie. No response was given. |

7

| | |
|---|---|
| **April 20th, 2019** | After paying over a year in lease payments, the company My 3-D ME is forced to close its doors. Brett's automobiles are repossessed after further hard money loans (at 100% interest), his two condominiums foreclosed on, and his credit destroyed. |
| **May 3rd, 2019** (Exhibit LL) | R. David Bishop files for emergency motion and appointment of Lisa Stephens as conservator and guardian of Max D Eliason. Copy of $10k check Max had written is attached calling it fraudulent while simultaneously reporting this as a crime to Adult Protective Services. |
| **May 21st, 2019** (Exhibit MM) | Following a demand for accounting and beneficiary statements, Kirton McConkie ignores the governing documents executed on December 8th, 2017 and removes Brett Eliason as Trustee and Manager of Eliason Eight, LLC and Eliason Enterprises, LLC and replaces him with Lisa's son and Brett's nephew, Jason Stephens. |
| **June 2019** | Brett engages Jaryl Rencher of Rencher Anjewierden on a contingency fee basis to file complaint against Kirton McConkie et al. |
| **September 9th, 2019** (Exhibit MM) | Jaryl Rencher submits complaint identifying multiple crimes including accounting fraud, breach of fiduciary duty, and states that Craig McCullough has transferred Eliason Eight assets (mineral rights) into an undisclosed charitable trust. Claims damages in the hundreds of millions. No response was required. It was subsequently discovered that Jaryl Rencher was a former partner at Kirton McConkie as a clear undisclosed conflict of interest. |
| **October 24th, 2019** (Exhibit NN) | Attorney Kent Snider appears as counsel for Max D Eliason and refuses Brett the right to visit his father for his 85th birthday. He stated he had extensive conversations with Max and stated his client was still upset at what Brett had stolen from his estate. At the same time Mr. Snider was claiming Max Eliason was in late-stage Alzheimer's disease. |
| **December 25th, 2019** | Brett is deprived of the right to see his father for Christmas. |

8

| | |
|---|---|
| | |
| **March 5th, 2020**<br>**(Exhibit OO)** | Brett files 300+ page Rico complaint to Chief Judge Robert Shelby of the United States District Court of Utah with all evidence necessary to put Craig McCullough in prison. Case is dismissed with prejudice without hearing or a jury trial, and no decision based on merits of the complaint. |
| **May 27th, 2020**<br>**(Exhibit PP)** | Craig McCullough and Lisa Stephens attempt to obtain a restraining order against Brett. He denied claiming lack of proof. |
| **May 28th, 2020**<br>**(Exhibit QQ)** | Craig McCullough and Lisa Stephens contact high school friend from the Unified Police Department (officer Scott Warenski) who lied on statement to court and stated Brett had violated a non-existent restraining order, and stated he was a co-habitant with Lisa Stephens (which had not happened since childhood 1984). Simultaneously Lisa's daughter Amy Menzel files and obtains misdemeanor for sending text (calling it electronic stalking). |
| **May 28th, 2020**<br>**(Exhibit RR)** | Judge Linda Jones issues warrant for arrest and sets bail at $25K. Without trial, Brett is sentenced to two years' probation and labeled a third-degree felon. He is given a court order to not contact Bryan or Lisa Stephens during this time, even though she is "the trustee" and Bryan "the CPA." |
| **May 2020 –**<br>**Present**<br>**(see court records)** | Brett files over 40 complaints demanding the State of Utah and the Department of Justice compel Kirton McConkie to account for the estate of Max and Joyce Eliason. Not one of the judges would allow for a hearing or a jury trial; a fact that continues to this day. |
| **June 2020**<br>**(Exhibit RR-SS)** | Brett discovers documents in certain files including a fraudulently created divorce decree, and the engagement letter between him and Kirton McConkie dating back to 2016. |
| **July 2020**<br>**(Exhibit TT)** | Kirton McConkie, while fraudulently representing Lisa Stephens as the unlawfully appointed Personal Representative, sues and obtains a $52K |

9

| | |
|---|---|
| | judgement against Brett, claiming Joyce Eliason did not know what she was signing when she executed the personal guarantee and the lease. Kirton McConkie began accruing this amount at 18%. |
| **November 15th, 2020** | Kirton McConkie issues an eviction notice to Brett and family with 3-day notice to vacate the home his mother bought him in 2016 where he had lived since then. Kirton McConkie claimed "unjust enrichment." The laws surrounding COVID prohibited them from achieving this retaliatory crime. |
| **December 17th, 2020** | Brett Eliason is placed in mental hospital with nervous breakdown, caused by unbearable stress and prescription drug abuse. He would spend Christmas Day inside without being able to see his own family. |
| **January 2nd, 2021 (Exhibit UU)** | Brett discovers clause in Trust documents giving Lisa Stephens the right to put life insurance on him, make her the beneficiary of said policies, and pay the premiums with Brett's lawful inheritance. |
| **June 15th, 2021 (Exhibit VV)** | Brett borrows $20K on a hard money loan on his last vehicle to secure legal representation from Hepworth and Associates. Craig McCullough states he and McConkie were open to a settlement provided Brett release all parties from liability. Despite Brett accepting to pursue this avenue, Kirton McConkie refuses to respond. |
| **December 21st, 2021 (Exhibit WW)** | Brett through his attorney Michael Hepworth, makes plea to see his father for Christmas to which Kirton McConkie and Lisa Stephens respond with vicious letter stating he would be able to see his father under supervised conditions for 45 minutes a month; provided he did not speak of any past or present litigation. Kirton McConkie made every inference Brett is a dangerous criminal as a clear character assassination as they have done since Tom Mecham admitted guilt on February 11th, 2019. |
| **December 2021- May 2023** | Hepworth and Associates continue to charge fees for weekly update meetings wasting both Plaintiff's time and money while refusing to file a motion in court to removed Craig and Lisa. Attorney Kyle Hoskins of |

| | |
|---|---|
| | Hepworth admitted he attended school with Greg Moesinger, and were very good friends. |
| **May 3rd, 2023** | Brett engages John Snow of Parson's Behle and Latimer to prepare a motion to Probate to remove Lisa Stephens as Trustee and Craig McCullough as an unlawful Trust Protector. He stated at the engagement that it would take two weeks to prepare and $5K. |
| **August 9th, 2023 (Exhibit ZZ)** | John Snow takes five months and charges $65K to prepare complaint exposing the "impermissible conflict of interest," and states every document prepared by Craig McCullough be considered void. |
| **August 2023** | Rather than ask for removal of Craig and Lisa, Mr. Snow files a derivative claim, and intentionally forgets to sign the complaint and include a summons. When Brett confronts John Snow and insists his initial requested motion be submitted to probate, he drops Brett as his client and Judge Coral Sanches dismisses the matter since a derivative claim requires an attorney; an alleged set up. |
| **October 6th, 2023 (Exhibit AAA)** | Knowing Plaintiff had spent all funds with John Snow, Kirton McConkie executes its $52K judgement which had accrued at 18% meaning Kirton McConkie entitled themselves to $115K. Defendants garnished all money in Plaintiff's account except for $5, and even drained Brett's daughters accounts. |
| **December 2023 (Exhibit BBB)** | Brett files complaint in federal court demanding accounting Case No. 2:23-00785 and submits hundreds of pages of evidence under Judge Tim Stewart. This would become the basis for Plaintiff's book "The Mormon Mafia and ME" which was now being written. All evidence from complaint filed by John Snow is included; leaving no doubt of guilt. |
| **January 2024, (Exhibit CCC)** | Brett files demand for Lisa to be removed as Trustee to both Judge Robert Faust and Kara Petit citing her refusal to provide any beneficiary statements since 2015, and no accounting for where over $250M in assets had disappeared to. |

11

| | |
|---|---|
| **February 27th, 2024** (Exhibit DDD) | Kirton McConkie claiming to represent Eliason Enterprises, LLC, obtains yet one more 3-day eviction notice for Brett's home located at 43 S. Fairway Drive. Judge Rita Cornish of the Second District Court of Utah refuses to hear appeal, and forces Brett and family to abandon property (to which he lawfully owns 33%). He is forced to leave his own home in the middle of a snowstorm. Kirton McConkie informed Sherrif Brett was "crazy and dangerous" and to not let him out of his sight. |
| **March 11th, 2024** (Exhibit EEE) | Following Brett's pleas for help from the State of Utah and Department of Justice to save his home, force statutory accounting, and see his own father; Judge Kara Petit as a probated judge slanderously labels Plaintiff as "vexatious." Judge Cornish, Judge Kouris, and Judge Tim Stewart all close cases since this ruling could apply to all other cases. This is the defense Kirton McConkie uses today to avoid answering simple yes or no questions surrounding their conflict of interest. |
| **September 2nd 2024** (Exhibit FFF) | Veronique Eliason files new case as Trustee of the Max and Joyce Eliason Estate and on behalf of Max D Eliason individually demanding Judge Tena Campell force McConkie to account for the estate, and to appoint counsel to represent Max since he had no representation. |
| **October 1st, 2024** (Exhibit GGG) | Lisa announces Max D Eliason is dying of a UTI despite having no symptoms of such. She refuses to state who the hospice worker but claims he has been under this type of care for over two years. Brett visits for 15 minutes and notes Max is drugged into a semi-comatose state, but shows no signs of illness nor fever. |
| **October 1st, 2024** (Exhibit HHH) | Brett requests four hours of time with his father to say goodbye, Kirton McConkie (Greg Moesinger) informs Brett he is not allowed to visit and would be trespassing and stalking should he insist. |
| **October 23rd, 2024** | Max D Eliason dies at the age of 89. His death certificate states cause of death as congenital heart failure, something Max had never been afflicted with. |

12

| October 28th, 2024 | Brett is allowed to see his father in Wasatch Lawn Mortuary before he was prepared for burial. It would be the first time he was allowed to see his dad on his birthday since 2018. |
|---|---|
| October 30th, 2024 | Brett demands information from mortuary including a copy of the last will and testament Lisa provided giving her sole discretion over the burial of their father, and an immediate autopsy. |
| October 31st, 2024 (Exhibit III) | While visiting the grave of his mother pending the funeral of his father, Brett arrives at the grave site to find Max Eliason had been buried that morning without a viewing and without a funeral. |
| October 31st, 2024 (Exhibit JJJ) | The very same day of his father's burial, Plaintiff publishes his book he has been working on for over a year, "The Mormon Mafia and ME." Included in the pages is most of the evidence discussed herein. Kirton McConkie or anyone else challenges its veracity. |
| November 15th, 2024 (Exhibit KKK) | Judge Tena Campbell immediately closes the complaint filed by Veronique Eliason as a Trustee on behalf of the Estate of Max and Joyce Eliason. She intentionally removes the name of the Estate, and erases the title of Trustee thereby falsifying court documents. Her reasoning is that it is apparent Veronique was simply after the money of her husband's parents; a slanderous comment coming from a US District Court Judge. |
| February 26th, 2025 (Exhibit LLL) | Kylie and Brittnie Eliason as beneficiaries of the Grandchildren's Trust file complaint pro se in federal court under Judge Nielson and Romero. Among multiple defendants, not one is required to respond to this day, despite multiple filings for summary judgement and statutory accounting. Judge Romero states "while she is deciding," all filings will be "lodged" thereby removing information from the Pacer system. |
| February 2025 to present | Whereas it has been proven there is an obvious gag order which Plaintiff has not been informed of; Brett Eliason publishes four more books (Kirton McConkie: The Lord's Lawyers from Hell; Faces of |

13

| | |
|---|---|
| | Corruption: Judge Coral Sanchez; Until Lambs Become Lions; and Dear President Trump, I Am Mad as Hell). Weekly emails are sent to all Kirton McConkie attorneys and various judges involved with one desperate plea; account for estate of Max and Joyce Eliason and give their youngest son the inheritance they have been paid millions to protect. |
| **October 31st, 2025 (Exhibit MMM)** | Exactly one year following the burial of Max Eliason; Chris Hill, Craig McCullough, and Greg Moesinger file a defamation case against Brett Eliason as individuals and not as part of Kirton McConkie. |
| **October 31st, 2025 (Exhibit NNN)** | The very same day, Kirton McConkie and the same attorneys represent Bryan Stephens, Lisa Stephens, Jason Stephens, and Mark Eliason in a duplicate complaint meant to overwhelm Plaintiff, and get a $7M judgement thereby taking away his final assets and cash flow in a clear attempt to once again make him homeless. |
| **November 3rd, 2025 (Exhibit OOO)** | Realizing the Defendants were doing this under the assumption it would be under the radar in State court, the two cases along with the probated case under Judge Kara Petit are removed to federal court eventually falling under the control of Judge Robert Shelby. |
| **December 2025, (Exhibit PPP)** | Judge Shelby remands all three cases back to State court under Judges Laura Scott, Todd Shaughnessy, and Kara Petit without making any of the multiple defendants respond within the 21 days required by law. |
| **January 30th, 2026 (Exhibit QQQ)** | Judge Scott holds hearing under Utah Rule of Civil Procedure 26, and opens the case to discovery despite Kirton McConkie arguing Plaintiff had no right to respond as a vexatious litigant. The same ruling was made by Judge Todd Shaughnessy. |
| **February 3rd, 2026 (Exhibit RRR)** | Brett Eliason files initial disclosures, requests for production, documents, and admissions in both cases and sets dates for depositions and a corresponding list of third-party individuals and entities to receive subpoenas. |

| | |
|---|---|
| **February 6th, 2026** (Exhibit SSS) | Brett Eliason files Amendment with the State of Utah confirming the governing documents of Eliason Eight, LLC and Eliason Enterprises, LLC are dated December 8th, 2017. |
| **March 6th, 2026** (Exhibit TTT) | Greg Moesinger unlawfully representing Eliason Eight, LLC issues letter to Brett stating the amendment was fraud, and all distributions would cease unless Brett agreed to conditions (criminal extortion). |
| **The Present** (Exhibit UUU) | Kirton McConkie has obtained what it hoped for from the beginning, to finally take every asset and dollar of cash flow lawfully entitled to him through his own LLC's and Trusts. The court has allowed them to not respond to the counter-complaints, blocked all subpoenas, depositions, and requests of any kind including admissions etc.

All pleas for emergency hearings are denied or ignored, and the most damning evidence against McConkie and the LDS Church either lodged or stricken.

This case has reached a point where the Court's intervention is no longer a matter of ordinary case management—it is necessary to prevent ongoing and compounding harm.

Defendant Brett L. Eliason stands in a position no litigant should occupy:

- stripped of income from a company in which he is a documented member and former manager;
- excluded from governance under disputed and unproven authority;
- denied access to financial records; and
- accused of fraud for actions taken to enforce compliance with the Company's governing documents.

At the same time, the parties asserting control over Eliason Eight, LLC have:

- refused to produce documentation establishing their authority;
- continued to exercise unilateral control over company funds; and
- conditioned Defendant's financial survival on his submission to their demands. |

This is not a hypothetical harm. This is not a future risk. This is a **present and ongoing deprivation of rights and resources**, occurring in real time while this matter remains pending before the Court. What makes this moment particularly significant is that the central issue is not complex: **Who has lawful authority to control Eliason Eight, LLC?**

That question is governed not by speculation or accusation, but by written documents already before the Court. The December 8, 2017 governing instrument establishes specific requirements for management authority and decision-making. Those requirements are not optional. They define the legitimacy of every subsequent action taken in the name of the Company.

Yet to date:

- no documentation has been produced demonstrating compliance with those requirements;
- no showing has been made that Defendant was lawfully removed; and
- no evidentiary basis has been presented to justify the complete termination of Defendant's distributions.
- no court requiring Plaintiffs to respond to simple yes/no questions.

Despite this, the consequences to Defendant have been severe and immediate.

His income has been cut off.

His access has been eliminated.

His position has been erased without adjudication.

And all of this has occurred while the issue of authority—the very foundation upon which these actions rest—remains unresolved. Courts are not merely forums for resolving disputes after the fact. They exist to ensure that **power is exercised lawfully while disputes are pending**. Where one party asserts control over an entity, controls its finances, and simultaneously deprives another party of their economic rights—without first establishing lawful authority—the risk of irreparable harm is not theoretical. It is inevitable.  The ongoing refusal by the court is not only considered heartless, it makes the parties involved complicit.

16

|  |  |
|---|---|
|  |  |